UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                              Case No. 1:22-cr-20559

v.                                                         Honorable Thomas L. Ludington
                                                           United States District Judge
NAPOLEAN RILEY,

                    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Napoleon Riley was a passenger in his stepbrother's car when it was stopped by the Michigan State Police (MSP) for being uninsured. During the stop, the officers frisked Riley and found a firearm in his waistband. Riley was then charged with being a felon in possession of a firearm.

Riley filed a motion to suppress the firearm, challenging the lawfulness of the frisk. The question presented is whether the officers had a reasonable suspicion to frisk Riley.

**I.**

On a September evening in Saginaw, Michigan, Defendant Napoleon Riley was riding in the front passenger seat of Willie Jenkins's black Cadillac. ECF No. 15 at PageID.38. Patrolling MSP troopers ran the Cadillac's license plate through their database, discovered that it was uninsured, and conducted a traffic stop.[1] *Id.* Trooper Bryan Jones walked to the driver's window and greeted Jenkins, while Trooper Joel Popp walked to Defendant's window. *Id.*; *see also* ECF No. 19, Ex. 2, at 0:39–0:42 [hereinafter "Dash Cam"].

---

[1] The MSP incident report additionally notes that the Cadillac had "illegal front side window tint" and that as troopers approached the Cadillac, they witnessed Defendant "toss a Bud Light [c]an into the back seat." ECF No. 15-2 at PageID.46.

Trooper Jones asked Jenkins for his driver's license, while Trooper Popp stood at the passenger-side window, peering into the car at Defendant. Dash Cam at 0:47. When Trooper Jones asked Jenkins if he had auto insurance, Jenkins responded that he did not. *Id.* at 0:59–1:02. While Jenkins searched for the Cadillac's registration, both officers continued to look into the car with their flashlights. *Id.* at 1:03–25. Trooper Jones then asked Jenkins what he and Defendant were doing, where they were going, and how they were related. *Id.* at 1:25–2:20. Jenkins said they were doing "nothing," *id.* at 1:26, that they were going to his "brother's crib," *id.* at 1:38, and that Defendant is his stepbrother, *id.* at 2:21.

Trooper Jones then asked Jenkins for consent to search the car, which Jenkins gave. *Id.* at 2:37–55. He then directed Jenkins to exit the Cadillac and asked for consent to frisk him, which Jenkins also gave. *Id.* at 2:55–3:14. After the frisk uncovered nothing, Trooper Jones directed Jenkins to sit on the hood of the patrol car. *Id.* 3:30–36.

With Jenkins sitting on the hood of the patrol car, Trooper Jones walked to the passenger side of the car and stood behind Trooper Popp. *Id.* at 3:37. Trooper Popp then asked Defendant, "You don't have anything on you, do you?" *Id.* at 3:40. Defendant responded that he did not. *Id.* at 3:42. Trooper Jones then started to open Defendant's door and said, "well I'm going to do a pat-down search, alright? Just for your protection and mine, alright?" Riley responded affirmatively, and within seconds, Trooper Popp found a firearm in the waist of Defendant's pants, placed it on the hood of the Cadillac, and handcuffed him. *Id.* at 3:52–4:00. Defendant confirmed that the firearm was his and that he did not have a license to carry it *Id.* 3:55–4:08.

On October 26, 2022, Defendant was indicted for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). ECF No. 1. On June 4, 2023, he filed a motion to suppress the firearm, alleging the search was unlawful for lacking "articulable facts to justify . . . the basis of a

reasonable suspicion that he was armed and dangerous." ECF No. 15 at PageID.36. The Government disagrees, arguing the frisk was reasonable under the totality of the circumstances. *See generally* ECF No. 19.

## II.

The Fourth Amendment protects people from unreasonable government searches and seizures by requiring a warrant based on probable cause, subject to some exceptions. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). One such exception to the warrant requirement is valid consent. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010). Another exception is a *Terry* stop, which permits an officer to stop and to frisk a person if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

"Reasonable suspicion requires more than a generalized hunch." *Gale v. O'Donohue*, 824 F. App'x 304, 314 (6th Cir. 2020). But it requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Courts consider the totality of the circumstances to determine whether an officer had reasonable suspicion. *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (quoting *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003)); *see also United States v. Smith*, No. 22-1055, 2023 WL 4700833, at *3 (6th Cir. July 24, 2023) ("[R]easonable suspicion depends on an examination of the totality of the circumstances." (citations omitted)). "[E]ven 'innocent conduct' viewed in the totality of circumstances can generate reasonable suspicion." *United States v. Vining*, No. 2:21-CR-20715, 2023 WL 3720911, at *3 (E.D. Mich. May 30, 2023) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).

**III.**

Notably, Defendant is not challenging the lawfulness of the traffic stop or Jenkins's consent to search the Cadillac—only the reasonableness of Trooper Popp's frisk.

The officers had reasonable, articulable suspicion that Defendant was armed and dangerous: they were patrolling a high-crime area and could see a bulge in Defendant's waistband that they suspected was a weapon. ECF No. 15-2 at PageID.47 ("Troopers observed a bulge at the front of [Defendant's] waistband, prior to being removed from the vehicle"); *see also United States v. Lewis*, 843 F. App'x 683, 692 (6th Cir. 2021) (holding that observing a "bulge in [the] waistband" of a pedestrian provides "reasonable suspicion" for a "pat-down search"). Thus, Trooper Popp's reasonable, articulable suspicion during the lawful traffic stop permitted him to frisk Defendant. *See Arizona v. Johnson*, 555 U.S. 323, 332 (2009) (holding that officers may frisk a passenger during a traffic stop if they have a reasonable suspicion that the passenger is armed and dangerous).

Defendant argues that Trooper Popp could not have observed a bulge in his waistband, because he was wearing an "oversized t-shirt and a jacket," ECF No. 15 at PageID.43, and Trooper Popp "was surprised himself by what he found, as evidenced by his reaction," *id.* at PageID.41. But, as the dashcam shows, Trooper Popp watched Defendant for three minutes before the frisk, which he began by touching Defendant's waistband, suggesting Trooper Popp had a particular reason to search that specific area. *See* Dash Cam at 3:42–4:00.

More importantly, even if the officers had not seen the bulge, Defendant consented[2] to being searched when Trooper Popp asked, "I'm going to do a pat-down search, alright? For your

---

[2] The MSP incident report incorrectly provides that Defendant "denied consent for a search." ECF No. 15-2 at PageID.47. But the dashcam footage of the traffic stop clearly shows Defendant providing verbal consent. Dash Cam at 3:52.

protection and mine, alright?" and Defendant responded, "Yeah." Dash Cam at 3:52–4:00. That

is, Defendant consented to being searched, so the evidence would not be suppressed.

**V.**

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress Evidence, ECF No.

15, is **DENIED WITH PREJUDICE**.

**This is not a final order and does not close the above-captioned case.**

Dated: August 8, 2023                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

- 5 -